UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ILLINOIS STATE PAINTERS WELFARE FUND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:19-cv-04171-SLD-JEH |
| PETERSON PARKING LOT STRIPING, INC., | ) ) ) | |
| Defendant. | ) ) | |

### ORDER

This is an action for unpaid contributions pursuant to Sections 1132 and 1145 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–461.  Before the Court is Plaintiff Illinois State Painters Welfare Fund's Renewed Motion for Default Judgment, ECF No. 8.  For the following reasons, the motion is GRANTED.  Plaintiff is awarded $60,641.09.

### BACKGROUND[1]

Plaintiff is an employee benefit fund maintained in accordance with ERISA and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–97.  Defendant Peterson Parking Lot Striping, Inc. is a party to a collective bargaining agreement ("CBA") with a union, the terms of which obligate it to pay fringe benefit contributions to Plaintiff for each hour of bargaining unit work performed by its covered employees.  The CBA also binds Defendant to the provisions of Plaintiff's trust agreement.  Pursuant to these agreements, Defendant must "provide

---

[1] The factual background is taken from the complaint, ECF No. 1, which the Court accepts as true because default has been entered against Defendant Peterson Parking Lot Striping, Inc.  *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc*., 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.").

1

[P]laintiff with written reports each month detailing hours worked by its employees and the corresponding contributions that are owed to [P]laintiff[]." Compl. 3, ECF No. 1. The reports and the corresponding contributions for each month are due to Plaintiff by the fifteenth day of the following month.

Plaintiff brought this suit on September 3, 2019, alleging that Defendant "ha[d] failed to report all hours of bargaining unit work performed by its employees and make payment to [P]laintiff for all contributions due for these hours as required under the [CBA] for the months of July 2018 to the present date," breaching the terms of the CBA and the trust agreement. *Id*. at 4. Plaintiff further claimed that Defendant had refused to provide access to its payroll and business records for an audit, which violated both the trust agreement and ERISA. Plaintiff requested that the Court order Defendant "to provide and/or make available to [P]laintiff or its auditor, all of [D]efendant's payroll and other business records for the period of January 1, 2015, through a future date determined by [P]laintiff or its auditor," that judgment be "entered in favor of [P]laintiff and against [D]efendant for all fringe benefit contributions, interest and liquidated damages owed to [P]laintiff for the period of January 1, 2015, through a future date including without limitation the ending date of any payroll compliance audit," and that the Court instruct Defendant to provide to Plaintiff "all such monies determined to be due and owing to [P]laintiff at the time judgment is entered, including without limitation fringe benefit contributions, liquidated damages, interest, and audit costs," along with reasonable attorney's fees and costs and any further just and equitable relief. *Id*. at 5–6.[2]

Defendant was served on September 21, 2019, *see* ECF No. 3, but failed to plead or otherwise defend, so the Clerk entered Defendant's default on November 22, 2019, at Plaintiff's

---

[2] Plaintiff has clarified that it is not seeking an award of interest on the unpaid contributions at default judgment. *See* Suppl. Renewed Mot. Default J. 1, ECF No. 10.

request, *see* Nov. 22, 2019 Text Order.  Plaintiff filed its first Motion for Default Judgment, ECF No. 5, on January 21, 2020.  On June 8, 2020, the Court denied the motion without prejudice except to the extent that it asked the Court to order Defendant to submit to an audit and instructed Defendant "to make available to Plaintiff all of Defendant's payroll and other relevant records covering the period from January 1, 2015 to the present."  June 8, 2020 Text Order.  Plaintiff filed a renewed motion on September 30, 2020, seeking entry of default judgment in the amount of $60,641.09.  Renewed Mot. Default J. 4.

## DISCUSSION

### I. Legal Standard

A court may enter judgment against a defaulted party under Federal Rule of Civil Procedure 55(b)(2).  A default judgment establishes, as a matter of law, that a defendant is liable to a plaintiff as to each cause of action alleged in the complaint.  *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).  After default is entered, "the well-pleaded allegations of a complaint relating to liability are taken as true."  *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).  However, allegations as to the amount of damages are not.  *Id.*  A court must conduct a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."  *Id.*

Furthermore, in accounting for damages, the Court is bound by the complaint.  Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  "This rule serves to protect defendants 'who choose to default, relying on the damage ceilings contained in plaintiffs' prayers'" rather than expending the funds to contest a lawsuit.  *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi &*

*Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008) (quoting *Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 611 (7th Cir. 1980)).

    II.    Analysis

        a.  Liability

The Court finds it appropriate to enter default judgment against Defendant under Rule 55(b)(2). ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a [CBA] . . . make such contributions in accordance with the terms and conditions of . . . [the] agreement." 29 U.S.C. § 1145. Plaintiff alleges that Defendant failed to make all required contributions to the employee benefit plans as mandated by the applicable CBA. *See* Compl. 4–6. The Court deems these well-pleaded allegations admitted, and Defendant is found liable as a matter of law for violating § 1145.

        b.  Damages

The Court finds it unnecessary to hold a hearing on damages because Plaintiff has requested specific amounts and has submitted documentary evidence and affidavits in support of its requests. The amounts requested are "capable of ascertainment" from documentary evidence or affidavits. *See Dundee Cement*, 722 F.2d at 1323. Thus, the only task remaining for the Court is to determine whether the relief requested by Plaintiff is supported by the facts alleged in the complaint and Plaintiff's documentary evidence and affidavits. *See e360 Insight*, 500 F.3d at 602.

           i.  Unpaid Contributions

Plaintiff requests $38,745.22 in unpaid contributions. Renewed Mot. Default J. 3. In support, it provides the affidavit of Joseph Romolo, the principal owner of the certified public accounting firm engaged by Plaintiff to perform the audit, Romolo Aff., Renewed Mot. Default

4

J. Ex. B, ECF No. 8-2 at 1–4, and the audit report produced by that firm, Statement, Romolo Aff. Ex. 1, ECF No. 8-2 at 5–15.

Romolo is a Certified Public Accountant and is responsible for supervising audits performed by his firm. Romolo Aff. ¶¶ 2, 5. He reviewed the payroll examination of Defendant and states that the examination "was performed using certain procedures specified by [Plaintiff] that are designed to determine if the data submitted to the Fund by [Defendant] is in compliance with the reporting provisions of applicable [CBAs] and [Plaintiff's] trust agreement" and that these procedures "are the same procedures used by other licensed accounting firms in other similar engagements" and "were performed in accordance with standards established by the American Institute of Certified Public Accountants." *Id*. ¶¶ 5–8. The audit determined that Defendant did not report all hours worked by its employees and owes Plaintiff additional contributions in the amount of $38,745.22. *Id*. ¶¶ 10, 11.

The audit report supports this figure. The public accounting firm obtained access to Defendant's accounting records and compared the hours per month worked by covered employees, according to these records, with the hours per month reported to Plaintiff. Statement 2.[3] Tables included in the audit report show the unreported hours and the corresponding amounts due to Plaintiff based on those hours. *See id*. at 7–10. The total amount due for the unreported hours comes to $38,745.22. *Id*. at 6.[4]

---

[3] Because the Statement has no page numbers, the Court has designated its own page numbers, beginning with the Statement's title page as page one.

[4] The audit also "identified instances where [Defendant] reported more hours to [Plaintiff] than what was listed in [Defendant's] payroll." Statement 3–5. As this lawsuit is limited to the issue of payments owed to Plaintiff, Compl. 4–6, and Defendant has not filed a counterclaim seeking to recover payments for any over-reported hours, the issue of any over-reported hours is outside of the suit's scope and will not be addressed. *Cf. Operating Eng'rs Loc. 139 Health Benefit Fund v. Gustafson Constr. Corp*., 258 F.3d 645, 651 (7th Cir. 2001) (finding that suits by employers to recover overpayments are permissible because the principles of the law of restitution have been incorporated into the common law of ERISA but stating that "merely because a payment is made by mistake doesn't give the payor an automatic right to the return of the payment").

In an ERISA civil enforcement action, the Court must award a successful fiduciary "unpaid contributions." 29 U.S.C. § 1132(g)(2)(A). The Court is satisfied that the evidence before it supports an award of the unpaid contributions requested. *See Plumbers & Pipefitters Loc. 99 Fringe Benefit Funds v. Watkins*, No. 05-1223, 2008 WL 2357663, at *3 (C.D. Ill. June 5, 2008) ("[T]he Court will allow an evidentiary inference based o[n] the Funds' audit to make a just and reasonable estimate of damages." (quotation marks omitted)). Plaintiff is awarded $38,745.22 in unpaid contributions.

### ii. Liquidated Damages

Plaintiff asks for $7,749.04 in liquidated damages for the unpaid contributions. Renewed Mot. Default J. 3. Under ERISA, a court must award a successful fiduciary an amount equal to the greater of either (a) interest on the unpaid contributions or (b) liquidated damages provided for under the plan in an amount not in excess of twenty percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C). Plaintiff asserts that "[u]nder [P]laintiff's trust agreement, [D]efendant owes [P]laintiff liquidated damages" equaling "20% of the delinquent contributions found due in the accounting." Renewed Mot. Default J. 3. The Trust Agreement provides that "[t]he Trustees may require the payment by Employers of liquidated damages at the rate of twenty percent . . . of the balance due" on late payments. Trust Agreement § 4.5, Compl. Ex. A, ECF No. 1-1. Plaintiff arrived at $7,749.04 by taking twenty percent of the sum of the unpaid contributions ($38,745.22). Mem. Supp. Renewed Mot. Default J. 5, ECF No. 9. The Court finds that this calculation is correct. Plaintiff is awarded $7,749.04 in liquidated damages for the unpaid contributions.

Plaintiff also requests $2,057.83 in "additional liquidated damages that were assessed and calculated pursuant to the provisions of . . . [P]laintiff's trust agreement for the late payment of

contributions for the months of May of 2017 and March, May, and June of 2018." Renewed Mot. Default J. 3.[5]  The affidavit of Ted Helfrich, a member of Plaintiff's Board of Trustees, supports this; Helfrich declares that Defendant "has a balance due on record with [Plaintiff] of $2,057.83 for additional liquidated damages that were assessed and calculated pursuant to the provisions of [Plaintiff's] trust agreement for the late payment of contributions in the months of May of 2017 ($836.03) and March, May, and June of 2018 ($1,221.80)."  Helfrich Aff. ¶ 8, Renewed Mot. Default J. Ex. A, ECF No. 8-1.[6]  The trust agreement clearly provides for liquidated damages for late payments, *see* Trust Agreement § 4.5, and so the Court further awards Plaintiff $2,057.83 in additional liquidated damages for the late payments of contributions for May 2017 and March, May, and June 2018.  The total amount of liquidated damages awarded to Plaintiff comes to $9,806.87.

### iii. Audit Costs

Plaintiff further requests the $4,178.25 it incurred in having the audit performed. Renewed Mot. Default J. 3.  The Trust Agreement provides that "[t]he Trustees may require the

---

[5] "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Plaintiff did not claim that Defendant had made late contributions in its complaint.  Rather, it alleged that Defendant had failed to make contributions.  However, it is unclear whether Defendant made these contributions after Plaintiff filed suit.  In any case, the complaint provided notice to Defendant that Plaintiff intended to seek an audit of the hours worked by covered employees beginning in January 1, 2015 and was alleging that Defendant was "liable for . . . liquidated damages . . . and all other reasonable expenses incurred by [P]laintiff in the collection of delinquent contributions" and, further, that Plaintiff was requesting that the Court order Defendant "to pay to . . . [P]laintiff all such monies determined to be due and owing to [P]laintiff at the time judgment is entered, including without limitation . . . liquidated damages."  Compl. 5–6.  The Court thus finds that the complaint provided sufficient notice to Defendant that Plaintiff sought to recover liquidated damages on late payments of contributions, as provided for in the trust agreement.  *See Appleton Elec.*, 635 F.2d at 611 ("The apparent purpose of limiting default judgments to the amount prayed for is to protect defendants who choose to default, relying on the damage ceilings contained in plaintiffs' prayers.").

[6] As noted above, the materials before the Court do not indicate when these late payments were finally made, *see supra* n.5, but even if they were made before this suit was filed, Plaintiff may still recover them.  Although the "liquidated-damages provision[] of ERISA appl[ies] . . . only to contributions that are unpaid at the date of suit," the Seventh Circuit has stated that ERISA does not preclude the award of contractual penalties on late contributions made before the complaint is filed.  *Gustafson Constr.*, 258 F.3d at 654–55.

7

payment by Employers of . . . costs and expenses (such as . . . all audit costs[)[7]] incurred by the Trustees and arising out of the collection of such Employer's delinquent contributions," Trust Agreement § 4.5; *see also id*. § 4.6 ("If [an] examination [of employment and payroll records] discloses that the employer has not been making its full payment as agreed, the costs of such examination shall be paid by the employer."); *id*. § 4.8 (providing that, should "the Trustees place the account in the hands of legal counsel for collection" of delinquent contributions, the employer would be liable for audit costs), and an award of the costs of an audit is likewise authorized by ERISA, *see* 29 U.S.C. § 1132(g)(2)(E) ("In any action . . . to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan such other legal or equitable relief as the court deems appropriate."); *see also Trs. of Teamsters Union Loc. 142 Pension Tr. Fund v. Actin, Inc.*, Cause No. 2:07-CV-289-TS, 2010 WL 3893982, at *10 (N.D. Ind. Sept. 28, 2010) ("Under ERISA, audit costs are part of the relief due to a prevailing plaintiff under 29 U.S.C. § 1132(a)(2)(E) as 'other legal or equitable relief.'" (citing *Moriarty ex rel. Loc. Union No. 727 v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005))).

Romolo states that Plaintiff "was invoiced $4,178.25 for the cost of having the audit report prepared" and further declares that, based on his knowledge of the industry, experience, and training, this "amount is customary and reasonable for the services performed." Romolo Aff. ¶ 12. Helfrich affirms that Plaintiff "incurred $4,178.25 in audit costs for the accounting." Helfrich Aff. ¶ 6. The Court is satisfied that the evidence before it supports an award of the costs of the audit. Plaintiff is therefore awarded $4,178.25 in audit costs.

---

[7] The text of the Trust Agreement omits the closing parenthesis in what the Court assumes is a typographical error. While the Court has inserted a closing parenthesis in the place where it believes makes the most sense, the meaning of the sentence would not be materially altered if the parenthesis was placed in a different spot.

### iv. Attorney's Fees and Costs

Finally, Plaintiff requests $7,910.75 in attorney's fees and costs. Renewed Mot. Default J. 4. In support, it provides an affidavit from one of Plaintiff's attorneys, Leahy Aff., Renewed Mot. Default J. Ex. C, ECF No. 8-3, along with an itemized list of billed charges for its attorneys' work on this case, which shows that Plaintiff seeks $7,458.75 in fees and $452.00 in court costs, *id*. ¶ 6. Plaintiff contends that these fees and costs are "customary and reasonable." Renewed Mot. Default J. 3.

A fiduciary that successfully enforces § 1145 is entitled to "reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D).[8] To calculate fees, courts use the lodestar method—reasonable hourly rate multiplied by the number of hours reasonably expended. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (applying the lodestar method to an ERISA case). The reasonable hourly rate is to be judged "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The best evidence of the market rate is the amount the attorney actually bills for similar work." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "[I]f that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id*. The fee applicant "bears the burden of establishing the market rate for the work." *Id*.

---

[8] Furthermore, the Trust Agreement provides that "[t]he Trustees may require the payment by Employers of . . . other costs and expenses (such as without limitation, attorneys' fees, filing fees and cost of service of papers . . .[)] incurred by the Trustees and arising out of the collection of such Employer's delinquent contributions." Trust Agreement § 4.5; *see supra* n.7 (describing the Court's addition of a closing parenthesis to the same section of the Trust Agreement); *see also* Trust Agreement § 4.8 ("In the event an Employer . . . becomes delinquent in his contributions and the Trustees place the account in the hands of legal counsel for collection, said delinquent Employer shall be liable for reasonable attorney's fees and for all reasonable costs incurred in the collection process, including court fees . . . .").

### 1. Reasonable Hourly Rate

The Leahy Affidavit states that according to the agreement between Plaintiff and the law firm of Cavanagh & O'Hara, hours expended by attorneys working on the case would be charged at a rate of $195.00 per hour, and hours expended by paralegals would be charged at a rate of $90.00 per hour. Leahy Affidavit ¶ 3. Leahy declares that these are the law firm's "customary rate[s] for such work" and that the rates "are reasonable in light of the experience of the individuals involved and the customary attorney billing rates generally prevailing in Sangamon County, Illinois." *Id.* ¶ 7.

The Court finds that these rates are reasonable. *See E. Cent. Ill. Pipe Trades Health & Welfare Tr. Fund v. River Valley Mech. Serv., Inc.*, Case No. 1:16-cv-01147-JBM-JEH, 2016 WL 6745506, at *2 (C.D. Ill. Nov. 15, 2016) (finding hourly rates of $195 and $90 reasonable in ERISA default action for unpaid contributions); *Mid Cent. Operating Eng'rs Health & Welfare Fund v. Kelley & May Dirtworks, Inc.*, No. 12-cv-1433, 2013 WL 3964777, at *2 (C.D. Ill. July 31, 2013) (finding hourly rate of $190 was reasonable in ERISA default action for delinquent contributions).

### 2. Hours Reasonably Expended

The Leahy Affidavit indicates that Plaintiff's attorneys spent 38.25 hours on this case, all of which should be charged at the $195 hourly rate.[9] Leahy Aff. ¶ 6. The Court finds that all of these hours were reasonably expended.[10] *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (explaining that in determining fees, "trial courts need not, and indeed should not, become green-eyeshade

---

[9] Because Leahy states that Plaintiff agreed to pay $195 per hour expended by attorneys and $90 per hour expended by paralegals, Leahy Aff. ¶ 3, and the billing record details only hours to be charged at the $195 rate, *id.* ¶ 6, the Court infers that the 38.25 hours were all expended by attorneys.

[10] Although the Court instructed Plaintiff to file a renewed motion for default judgment after denying the first motion without prejudice (apart from ordering Defendant to submit to an audit), *see* June 8, 2020 Text Order, the Court finds that hours expended on both the first and the renewed motions for default judgment were reasonable— without the audit, Plaintiff could not have filed a properly-supported motion for default judgment.

10

accountants," as "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection"). Accordingly, the lodestar amount is $7,458.75 (38.25 hours multiplied by $195.00 per hour). Plaintiff is awarded this amount, plus $452 in court costs, *see* 29 U.S.C. § 1132(g)(2)(D)–(E) (authorizing an award for "costs of the action" to recover unpaid contributions as well as "such other legal or equitable relief as the court deems appropriate"), for a total of $7,910.75.

## CONCLUSION

Accordingly, Plaintiff Illinois State Painters Welfare Fund's Renewed Motion for Default Judgment, ECF No. 8, is GRANTED. Defendant is liable as a matter of law as to all the causes of action alleged in the complaint, and Plaintiff is awarded $38,745.22 in damages for unpaid contributions, $9,806.87 in liquidated damages, $4,178.25 in costs for the audit, and $7,910.75 in attorney's fees and costs, for a total of $60,641.09. The Clerk is directed to enter judgment and close the case.

Entered this 14th day of September, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE